UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ADINE PIEDISCALZO | CIVIL ACTION |
| VERSUS | NO.  13-29 |
| WENDY'S INTERNATIONAL, INC. | SECTION "N"  (4) |

## ORDER AND REASONS

Before the Court is the defendant's motion for summary judgment **(Rec. Doc. 23)**. Plaintiff has filed an opposition memorandum (Rec. Doc. 25), and defendant has filed a reply (Rec. Doc. 31).

**I.    BACKGROUND:**

Plaintiff seeks damages for injuries allegedly sustained when she slipped and fell in a puddle of water outside the restroom in defendant's LaPlace, Louisiana restaurant, where she and her family had stopped for breakfast while driving from Ponchatoula to Metairie for an early morning soccer game.

**II.    LAW AND ANALYSIS:**

**A.    Standard on Summary Judgment:**

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If the issue is one on which the nonmoving party will bear the burden at trial, then "the burden on the moving party may be discharged by 'showing' — that is, pointing out to

the district court — that there is an absence of evidence to support the nonmoving party's case." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 234 (5th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the moving party has carried this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  "[T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Matsushita,* 475 U.S. at 587). "If the nonmoving party responds satisfactorily, the motion for summary judgment is denied, and the case proceeds to trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992).

"In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop*, 939 F.2d at 1263 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  "Indeed, even if the moving party comes forward with an abundance of evidence supporting its theory of the case, the nonmoving party may nevertheless defeat the motion by countering with evidence of its own, which, if credited by the fact-finder, would entitle the nonmoving party to a verdict in its favor." *Id.* at 1263.

B.     **Louisiana Merchant Liability Act:**

This case is governed by the Louisiana Merchant Liability Act, which imposes a heavy burden of proof on plaintiffs who seek damages arising out of a fall on a merchant's premises. The statute provides in pertinent part:

> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
> (1)    The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2)    The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3)    The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

La. Rev. Stat. § 9:2800.6(B). This provision requires the plaintiff to prove each of the three subsections with no shifting of the burden. *See White v. Wal–Mart Stores, Inc.*, 699 So.2d 1081, 1084–85 (La. 1997). Thus, failure to prove any one of the three is fatal to plaintiff's claim.

Here, defendant argues that it is entitled to summary judgment because plaintiff cannot carry her burden of proof on the second element, *i.e.*, that the defendant "either created or had actual or constructive notice of the condition...prior to the occurrence." La. Rev. Stat. § 9:2800.6(B)(2).

3

### C. **Plaintiff's Evidence:**

The plaintiff in this case argues that she can satisfy the "merchant created condition" prong of the second element.[1]  According to plaintiff, the evidence shows that the puddle was created by the defendant's employees cleaning activities the previous night.  Plaintiff has no direct evidence showing who or what created the puddle.  As she conceded in her deposition testimony, she has no knowledge as to how the water came to be on the floor, and personally speculated that it might have dripped from a nearby air condition vent.  *See* Rec. Doc. 25-3 at 34-35.  However, plaintiff has submitted significant circumstantial evidence[2] supporting her contention that the puddle was a "merchant created condition."  Specifically, plaintiff relies upon the testimony of Michael Pace, a Wendy's employee who was working the morning of the slip and fall.

Pace testified in his deposition that the Wendy's night crew mops the floor right after the front counter closes at 10:00 p.m.  *See* Rec. Doc. 25-4 at 17, 19.  He testified that he had seen the hallway floor wet before, from late night mopping, spilled drinks, plumbing problems, etc. *Id.* at 39, 41.  He did not see the puddle in which plaintiff slipped, either before or after the fall,

---

[1] Plaintiff argues alternatively that she can satisfy the temporal element required to establish constructive knowledge.

[2] The law does not distinguish between circumstantial and direct evidence.  *See Gomez v. St. Jude Medical Daig. Div. Inc.*, 442 F.3d 919, 933 (5th Cir. 2006).  If circumstantial evidence is sufficient to support a reasonable inference in favor of the non-moving party, then it can defeat a motion for judgment as a matter of law, even in the absence of direct evidence of the fact in dispute.  *Id.* at 933-36; *see also Ceasar v. Wal-Mart Stores, Inc.*, 787 So.2d 582, 585 (La. Ct. App. 3d Cir.), *writ denied*, 799 So.2d 1143 (La. 2001); *Rodgers v. Food Lion, Inc.,* 756 So.2d 624, 628 (La. Ct. App. 2d Cir.), *writ denied*, 765 So.2d 339 (La. 2000).

and had not looked at the hallway floor that morning prior to the fall.[3]  *Id.* at 34 -36.  However, when shown a photograph of the puddle in question,[4] he testified that he had seen conditions like the one depicted in the photograph, "usually opening [the store] in the morning."  *Id.* at 40-41, 42.  He testified that he had often seen water accumulated in the mornings in the spot of plaintiff's fall and that he witnessed water there "[o]nce or twice a week," although the amount of water was usually smaller than the puddle photographed on the morning of the fall.  *Id.* at 42-43, 55.  When asked what had caused the condition, he answered "late night mopping."  *Id.* at 40, 43.

> Q: ...Had you ever seen a condition like the one in the pictures that Wendy's lawyer showed you?
> A: Yeah.
> Q: You've seen conditions like that before?
> A: Yeah.
> Q: When you had seen that condition before, did you know what caused that condition?
> A: I'm not exactly sure, but we — it's usually from late night mopping if they didn't dry mop the floor correctly.
> Q: You said there are drains —
> A: In the bathroom and behind the counter.
> Q: But no drains in that hallway?
> A: No.
> Q: ....So like you said, if you mopped it but didn't dry mop it, there is no drain to get rid of that water?
> A: Yeah.
>
> [Counsel for defendant]:   To be clear, you need to ask him when he saw those conditions.

---

[3] The first time he saw the area that morning was after the puddle had been mopped. Rec. Doc. 25-4 at 36.

[4] *See* Color Photograph at Rec. Doc. 25-2.  The photograph depicts a large, substantial puddle, not merely a damp area, and plaintiff in her deposition described it as a "puddle."  *See* Rec. Doc. 25-3 at 44.   She has testified that it covered an area approximately two feet wide and four to five feet long.  *See*, 25-3 at 32.

> Q: When had you seen that type of condition before?
> A: Usually opening in the morning sometimes. Not all of the time, but every now and then they have water.
>
> \* \* \* \*
>
> Q: As I understand it from your testimony, you had seen water on the floor like this at opening on other occasions; correct?
> A: Yeah, but not such widespread. They usually have a little water that collects over here (indicating).
> Q: You're pointing to the pictures in the same area where there is water in the pictures; is that correct?
> A: Yeah, around that area.
> Q: ...So the water that you have seen that collects there —
> A: It's not usually that large amount. Usually smaller.
> Q: Do you know what causes that?
> A: Usually just late night mopping.
> Q: Okay.
> A: I guess the floors are a little uneven, and in certain areas it collects a little bit of water.
>
> \* \* \* \*
>
> Q: Okay. The water that collects on the floor in this area, and I think you said this area might be a little lower and that's why you think the water collects there?
> A: Yes, two areas on the floor.
>
> \* \* \* \*
>
> Q: This wasn't something that you particularly would be the only one that would be able to see that?
> [Objection. Speculation. He can only testify to what he knows.]
> You can answer the question.
> A: I know water usually sits in the area. That's all I know.
>
> \* \* \* \*
>
> [Cross Examination by Counsel for Defendant]
>
> Q: Prior to this lady alleging that she fell, how many times do you believe you had seen water in that area on the floor when you had opened the store?
> A: Once or twice a week I would say.

Rec. Doc. 25-4 at 40-43, 52, 55. Regarding defendant's mopping procedure, Pace testified:

> Q: If there is a liquid left over from mopping, that's going to be the cleaning solution?
> A: Most likely water. Usually you put the water or solution on the floor and then we pour buckets of water on the floor.
> Q: That's what I'm trying to find out. Do you spray like a soap by itself?
> A: We use a solution, and after that, you get pails of water to rinse off the solution, and then we dry mop it.

6

*Id.* at 51-52.

Also supporting plaintiff's contention that the condition was "merchant created" is the fact that plaintiff and her son were among the first patrons to enter the restaurant that morning, thus reducing the likelihood that the puddle could have been created by someone other than an employee. Plaintiff testified in her deposition that she and her son "were the first people and the only people there." Rec. Doc. 25-3 at 34. Michael Pace testified that he was not sure whether plaintiff was with the first group of customers to come in that day. *See* Rec. Doc. 25-4 at 26, 29. However, he testified that the store opened at 7:00 a.m., and was "pretty sure" that the slip and fall happened about 7:30 a.m. *Id.* at 29. He also testified that the front counter was rarely busy in the early morning and that the store ultimately quit serving breakfast, probably due to the slow business. *Id.* at 28-29.

Drawing all inferences in favor of the non-moving party, the Court finds that the testimony of Michael Pace, if credited by the fact-finder, would support a verdict in plaintiff's favor on the issue of whether the merchant created the condition that caused the damage. Thus, the defendant is not entitled to judgment as a matter of law. Accordingly,

**IT IS ORDERED** that defendant's motion for summary judgment (**Rec. Doc. 23**) is hereby **DENIED**.

New Orleans, Louisiana, this 27$^h$ day of September, 2013.

                                          **KURT D. ENGELHARDT**
                                          **UNITED STATES DISTRICT JUDGE**